UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NOSAKARE N. ONUMONU,

        Plaintiff,                      Case No. 1:21-cv-33

v.                                          Honorable Janet T. Neff

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

I.    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the Michigan Department of

Corrections, Warden John Davids, Inspector Unknown Barber, and Resident Unit Manager Erric Smith.

Plaintiff alleges that at approximately 12:15 p.m. on July 20, 2020, he was summoned to the control center to be reviewed on two class III misconduct tickets. The tickets asserted that Plaintiff had violated posted rules on July 18, 2020, and July 19, 2020, and were written by Corrections Officer Nehf, who is not named as a Defendant in this case. According to the misconducts, Plaintiff had been seen on camera "passing objects through unit 2 cell 52's food slot while on his work assignment." (ECF No. 1, PageID.2.) Non-defendant officers Nehf and Erosius completed two different work assignment evaluation reports, which requested that Plaintiff be terminated from his work assignment as a porter on unit 2.

On July 22, 2020, Defendant Smith prematurely terminated Plaintiff from his work assignment before Plaintiff had received a hearing, in violation of MDOC policy. In addition, Defendant Barber violated MDOC policy when he used footage from a surveillance camera and emailed a statement to Prison Counselor J. Luther, asserting that he personally saw Plaintiff pass something on camera.

On July 23, 2020, Prison Counselor J. Luther conducted an administrative hearing and dismissed both misconduct tickets, stating that although Defendant Barber verified that Plaintiff pushed something into cell 2-052 through the side of the door, the camera never showed Plaintiff passing anything through the cell foodslot. (ECF No. 1-3, PageID.15.) On July 24, 2020, Defendant Smith summoned Plaintiff to the unit counselors' office, where Counselors Luther and Hengesbach were waiting. Defendant Smith informed Plaintiff that he was kicking him out of the Future Dog Leader Program, which paid $54.00 a month, and was terminating Plaintiff from the Prisoner Observation Aide program, which paid $3.34 per sitting. When Plaintiff asked why,

Defendant Smith stated "The camera saw you pass something, I don't care that you beat the misconducts." (ECF No. 1, PageID.3.) Plaintiff attempted to ask further questions, but Defendant Smith merely yelled, "I am kicking you out because I can, I don't care that you were found not guilty, now pack your shit, you're moving to 7 unit." (*Id*. at PageID.3-4.) Plaintiff states that he was terminated from his work assignments in retaliation for being found not guilty of the misconduct tickets.

Plaintiff filed a grievance on Defendant Smith for intimidation and retaliation, and another grievance on Defendant Barber for violating Plaintiff's right to a fair and impartial hearing. Both grievances were denied by the grievance coordinator. On July 30, 2020, Plaintiff complained to Defendant Davids about the unfair denial of his grievances and the retaliatory termination from his job assignments. Defendant Davids told Plaintiff to put a note on the step II appeal form and that he would look into Plaintiff's concerns. However, no corrective action was taken.

Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III. **Eleventh Amendment**

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh

Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the MDOC.

IV. **Respondeat Superior**

Plaintiff fails to make specific factual allegations against Defendant Davids, other than his claim that Davids failed to conduct an investigation in response to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendant Davids engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against Defendant Davids.

V.      **Due process**

To the extent that Plaintiff claims that his due process rights were violated by the handling of his class III misconduct tickets, such claim lacks merit.  A minor misconduct conviction does not implicate the due process clause.  A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  See *Sandin v. Conner*, 515 U.S. 472, 486–87 (1995).  The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.  *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Moreover, Plaintiff was found not guilty of the misconduct tickets following a hearing.  Therefore, it is clear that Plaintiff received due process of law.  Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false.

Plaintiff also claims that the termination from his job assignments violated his due process rights.  The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment.  *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as

6

frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutionally protected liberty or property interest in prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job."). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)); *see also Davidson v. Fed. Bureau of Prisons*, No. 17-5429, 2017 WL 8897005, at *3 (6th Cir. Nov. 29, 2017) (citing *Carter*, 69 F. App'x at 680). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

VI. **Retaliation**

Plaintiff claims that Defendant Smith fired Plaintiff from his jobs in order to retaliate against him for being found not guilty of the class III misconduct tickets. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Initially, the Court notes that being found "not guilty" of a misconduct ticket is not actually "conduct" on the part of Plaintiff; it therefore most certainly cannot be deemed protected conduct. In addition, a review of the record, including the statements made by Defendant Smith, show that Defendant Smith believed that Plaintiff had engaged in the misconduct he was charged with and that the "not guilty" finding did not mean that Plaintiff had not violated the rules. Therefore, it is clear that Defendant Smith was not motivated by a desire to retaliate against Plaintiff for the "not guilty" findings, but rather that he terminated Plaintiff from his job assignments despite the fact that Plaintiff was found not guilty. Consequently, Plaintiff has failed to state a retaliation claim against Defendant Smith.

Finally, Plaintiff claims that Defendant Barber retaliated against him when he emailed a statement to Prison Counselor J. Luther, asserting that he personally saw Plaintiff pass something on camera, because he wanted to see Plaintiff punished—i.e., lose his jobs—for a 2018 incident concerning a PREA complaint. However, Plaintiff fails to allege any facts in support of his assertion that Defendant Barber was motivated by a desire to retaliate against Plaintiff for an incident that happened in 2018, roughly two years prior to the events in this case.

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if

8

> temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

In this case, the conduct that allegedly motivated Defendant Barber occurred two years before the events in this case. Plaintiff fails to allege any facts in support of a findng that Defendant Barber was seeking to retaliate against Plaintiff. Moreover, a defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith*, 250 F.3d at 1038; *Shehee*, 199 F.3d at 301. It does not appear as if Defendant Barber was involved in the decision to have Plaintiff fired from his jobs. Therefore, Plaintiff's retaliation claim against Defendant Barber is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   March 16, 2021                                    /s/ Janet T. Neff
                                                             Janet T. Neff
                                                             United States District Judge